IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM T. FREELAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO.: |
| v. | ) | |
| | ) | |
| MICHAEL GOODRICH; AND BE&K, INC., | ) | |
| | ) | JURY DEMAND |
| | ) | |
| Defendants. | ) | |
| | | CV-09-TMP-2197-S |

## COMPLAINT

COMES NOW the Plaintiff, William T. Freeland, by and through his attorneys, and for his Complaint against Defendants says as follows:

### STATEMENT OF THE PARTIES

1. Plaintiff William T. Freeland (hereinafter "Freeland") is over the age of nineteen years and is a resident of Shelby County, Alabama.

2. Defendant Michael Goodrich (hereinafter "Goodrich") is over the age of nineteen years and is a resident of Jefferson County, Alabama, and was at times material to the complaint an officer at BE&K, Inc.

3. Defendant BE&K, Inc. (hereinafter "BE&K"), is a corporation, organized and existing under the laws of the State of Delaware. BE&K operates and has, at all times material to the complaint, had its principal office and place of business in Jefferson County, Alabama. Defendant BE&K was, at some times material to the complaint, an

independent privately-owned corporation. On or about July 1, 2008, BE&K became an indirect, wholly-owned subsidiary of KBR, Inc.

## JURISDICTION AND VENUE

4. The Court has original jurisdiction of this cause pursuant to 28 U.S.C. §1331, in that Count I of this Complaint alleges violations of Federal Securities Law, including violations of §10(b) of the Securities Exchange Act of 1934 and 17 C.F.R. §240.10b-5. The Court has jurisdiction over all other claims pursuant to 28 U.S.C. §1367. Venue is proper in the Northern District of Alabama pursuant to 28 U.S.C. §1391.

## STATEMENT OF THE FACTS

5. KBR, Inc. (hereinafter "KBR"), is a corporation, incorporated under the laws of the State of Delaware, and with its principal office in Houston, Texas. KBR purchased all outstanding stock of BE&K in 2008, and merged BE&K with Whitehawk Sub, Inc., a wholly-owned subsidiary of KBR (hereinafter "Whitehawk"). The resulting entity is known as BE&K, Inc., and remains an indirect, wholly-owned subsidiary of KBR. On information and belief, by reason of its merger, the merged corporation retained the assets and assumed the liabilities of BE&K.

6. At all times pertinent to this complaint and prior to the merger, Goodrich was the Chief Executive Officer, President, and majority shareholder of BE&K.

7. At all times pertinent to this complaint and prior to the merger, the culpable conduct alleged herein on the part of Mike Goodrich while acting under the scope and duty of his employment, is imputable to BE&K under the doctrine of *Respondeat Superior*.

8.  In October 1993, Freeland was hired as an employee of BE&K. He worked at BE&K from 1993 until 2008, and rose to the level of Senior Vice President of Sales in 2005.

9.  Throughout his tenure at BE&K, Freeland purchased shares of Class A and Class B Stock in the corporation on multiple occasions when BE&K's Board of Directors invited certain employees, including Freeland, to purchase company stock. These shares of stock were not made available to the general public.

10. In early 2007, Freeland was assigned to work for BE&K in Russia, and spent much of his time working on behalf of BE&K with International Paper and ILIM, a Russian-owned paper company in St. Petersburg, Russia.

11. While working in Russia, Freeland heard sensitive information and rumors concerning another BE&K executive from a client. Freeland relayed this information to Goodrich in order to put Goodrich on notice of a potential issue with a very important client to BE&K. Goodrich thanked Freeland for sharing this information.

12. On or about December 6, 2007, Freeland met with Goodrich and Goodrich expressed that he no longer wanted Freeland working for BE&K in Russia. In a series of meetings afterwards, Goodrich and Freeland discussed numberous options for Freeland to continue working at BE&K and how Freeland might conclude his work in Russia. This included a suggestion by Goodrich that Freeland work half-time at BE&K.

13. On or about December 18, 2007, Freeland met with Mike Goodrich and Ed Cassady, a BE&K employee who Freeland knew to be a licensed attorney in Alabama. At this meeting Goodrich offered Freeland a retirement package of nine months pay, a period of health insurance, debt forgiveness for a country club membership, certain

employment benefits for an additional nine months, and other consideration. Though Freeland would have preferred to continue his employment at BE&K, Freeland relied on statements by Goodrich regarding Freeland's prospects with BE&K and the retirement offer appeared, at that time, to be the best solution for all parties.

14.     Ed Cassady drafted the retirement agreement in accordance with the offer presented by Goodrich. On December 18, 2007, Freeland and Goodrich executed the retirement agreement, which was effective January 1, 2008, at the earliest.

15.     Under the terms of the retirement agreement, Freeland was required to sell all of his shares of stock back to BE&K, which included 8,000 shares of Class A Stock and 10,000 shares of Class B Stock. Freeland was told by Goodrich that he had to sell these shares at a price calculated by a specific formula under an amended stock purchase agreement. BE&K represented this value to be $487,800, or $27.10 a share. (This amount was adjusted under the amended stock purchase agreement by BE&K to add $51,318.12 to the payment of Freeland's shares for a total of $539,118.21 or $29.95 per share).

16.     During these negotiations regarding Freeland's retirement, Goodrich, Ed Cassady, and others on the board of directors and/or other BE&K executives were aware that BE&K had been actively exploring and had taken specific actions to effect the sale or merger of BE&K, which would result in a sales price per share far in excess of the price which they led Freeland to believe he was required to accept. Freeland had no knowledge of such information and was unaware of any such actions by or intent on the part of BE&K.

17. In June 2007, BE&K hired FMI Corporation ("FMI") to prepare financial information concerning the merger or sale of BE&K, and to assist in marketing BE&K.

18. As early as the summer of 2007, BE&K had preliminary sale or merger discussions with KBR.

19. From September 2007 through January 2008, BE&K presented numerous companies, including KBR, with information packages concerning the purchase of BE&K, in whole or in part.

20. Before Christmas 2007, BE&K had received numerous formal and informal offers to purchase the company in whole or in part, and Defendants BE&K and Goodrich had decided that by mid-January 2008, BE&K would choose which of the corporate suitors it found most desirable, and would accordingly choose its merger partner.

21. On January 9, 2008, less than one month after Freeland executed the retirement agreement, and only five days after he sold back his shares, KBR and FMI, acting as authorized agent of BE&K, entered into a Confidentiality Agreement for KBR's possible merger or joint venture with BE&K.

22. Such information was unknown and undisclosed to Freeland prior to the execution of the retirement agreement, and, if it had been disclosed, would have been a material consideration for Freeland in accepting or rejecting the terms of the retirement agreement. Such information would also have caused Freeland to refuse the tendered agreement and sale of his stock for the offered price.

23. If Freeland had known that BE&K was considering a merger or sale in the near future, he would not have signed the retirement agreement and would have continued to work towards a solution with Goodrich.

24. On May 6, 2008, KBR, Whitehawk and BE&K entered into a merger agreement. After post-closing adjustments, KBR paid approximately $557 million to acquire BE&K.

25. As a result of the merger, BE&K shareholders received approximately $141 per share, compared to the $29.95 (as adjusted) that Freeland received five months earlier.

26. In addition, had Freeland not retired on January 1, 2008, as a result of Defendants' fraudulent omission to provide Freeland with material information, Freeland would have received a distribution from a $2.2 million dividend for Class A shareholders and would have received an interest in a limited partnership, which currently owns and operates a hotel in Riga, Latvia, pursuant to the merger with KBR.

## COUNT I
## Violation of §10(b) of the Securities Exchange Act of 1934 and 17 C.F.R. §240.10b-5

27. Plaintiff realleges and readopts by reference all previous paragraphs of the Complaint as though fully set forth herein.

28. Pursuant to the retirement agreement dated December 18, 2007, Freeland agreed to sell his 18,000 shares of stock back to BE&K. This agreement was by its own language and terms voidable until December 25, 2007, and not effective until January 1, 2008.

29. The sale and the transfer of the Freeland's shares to BE&K was consummated on or about January 4, 2008.

30. At the time of the execution of Freeland's retirement agreement and at the time of the sale of Freeland's stock, by virtue of Goodrich's position as the chief executive officer and majority shareholder of BE&K, Goodrich had knowledge of BE&K's decision and plan to sell all of or a significant portion of its operations or to merge with a purchasing entity, and of all ongoing merger and/or sales negotiations with numerous

companies. Goodrich knew or should have known (as an attorney, a savvy business leader, and knowledgeable financial actor) that he had a duty to disclose such information. He knew or should have known that such information would have been material to Freeland.

31. Goodrich and BE&K acted with a mental state embracing intent to deceive, defraud, or manipulate Freeland into selling his shares without knowledge of material information. Goodrich and other BE&K shareholders knowledgeable of the material information profited from Freeland's decision to sell his shares. Goodrich himself made over $1,200,000 because of the fraudulent material omission. The failure to disclose such information to Freeland was an extreme departure from the standards of ordinary care and presented an overt danger that Freeland would be misled when selling his shares. That the decision, plan, and actions to merge or sell the company were material, and that the there was a duty to inform Freeland of these facts, were either known the Defendants, or were so obvious that Defendants must have been aware of them.

32. At the time Freeland entered the retirement agreement, this material information regarding BE&K's decision and plan and its ongoing merger or sale negotiations with numerous companies, which would have greatly increased the value of the shares of BE&K, was not known and not available to be discovered by Freeland.

33. By virtue of Freeland's lack of knowledge of the intention and the steps BE&K had taken in furtherance of a merger or sale, as set forth above, and Goodrich's fraudulent failure to disclose this information, Freeland agreed to sell his stock back to BE&K at $29.95 per share, as adjusted. Had Freeland discovered this information known to Goodrich and BE&K, Freeland would not have agreed to sell (and he would not have

sold) his shares back to BE&K at a fraction of the price the shares were worth at the time of the merger, only a short time afterward. Freeland would have waited until the merger of BE&K, in which each shareholder received approximately $141.76 a share and other consideration.

34. The Defendants possessed scienter and committed a material violation of Federal Securities Law, including violations of §10(b) of the Securities Exchange Act of 1934 and 17 C.F.R. §240.10b-5. They knew of the ongoing decision and plan to market and sell BE&K. They intentionally withheld material information from Freeland. Their acts violated the aforementioned securities laws.

WHEREFORE, Plaintiff Freeland demands judgment against Defendants BE&K and Goodrich in the amount of $2,200,000.00, plus interest and costs. Freeland further prays that this Court will grant such other and further relief as it may deem appropriate.

## COUNT II
### Fraud
### (Violation of § 6-5-101 through 6-5-104, Code of Alabama 1975)

35. Plaintiff realleges and readopts by reference all previous paragraphs of the Complaint as though fully set forth herein.

36. Defendants BE&K and Goodrich made false representations of material facts to induce plaintiff's sale of his BE&K stock. These include representations concerning: (a) why BE&K and Goodrich wanted Freeland to resign from the company; (b) what active steps or intentions BE&K had with regard to merger or acquisition; (c) the present and future value of Freeland's shares of stock in BE&K; and (d) Freeland's obligation to sell his stock back to BE&K upon retiring.

37. These representations were false. Either BE&K and Goodrich knew they were false and made the representations intentionally or recklessly without regard to their truth, or BE&K and Goodrich made the representations negligently. Freeland detrimentally relied on these misrepresentations of material fact. The actions on the part of BE&K and Goodrich constitute fraud under the Code of Alabama § 6-5-101, § 6-5-102, § 6-5-103 and § 6-5-104.

38. Freeland reasonably relied upon the representations made by BE&K and Goodrich and as a proximate cause of these misrepresentations and his reliance thereon, Freeland has suffered economic damages exceeding $2,000,000, and has in addition suffered mental anguish, anxiety, and grief.

WHEREFORE, Plaintiff Freeland demands judgment against Defendants BE&K and Goodrich, for compensatory and punitive damages in the amount of $6,000,000, and costs of this action.

## COUNT III
### Fraudulent Suppression

39. Plaintiff realleges and readopts by reference all previous paragraphs of the Complaint as though fully set forth herein.

40. Being under a fiduciary and/or legal duty to disclose facts to Freeland, Defendants BE&K and Goodrich, suppressed material facts from the Plaintiff, and the Plaintiff detrimentally relied upon the Defendants' failure to disclose material facts to him which Defendants were under a duty to disclose. These material, undisclosed facts included BE&K's decision, plan and intention to pursue merger and acquisition prospects, and to hire FMI to aid them in this process. As a result, Freeland reasonably relied upon the

Defendants' failure to make these legally required disclosures in selling his stock to BE&K, and was damaged thereby.

WHEREFORE, Plaintiff Freeland demands judgment against Defendants BE&K and Goodrich for compensatory and punitive damages in the amount of $6,000,000, and costs of this action.

## COUNT IV
## Fraud in the Inducement

41. Plaintiff realleges and readopts by reference all previous paragraphs of the Complaint as though fully set forth herein.

42. Defendants BE&K and Goodrich deceived Freeland by making willful, wanton, reckless, or negligent misrepresentations of material facts, or by willfully, wantonly, recklessly or negligently failing to disclose material facts, which, as a result, induced Freeland to enter into the retirement contract.

WHEREFORE, Plaintiff demands judgment against Defendants BE&K and Goodrich for compensatory and punitive damages in the amount of $6,000,000, and costs of this action.

## COUNT V
## Breach of Fiduciary Duties

43. Plaintiff realleges and readopts by reference all previous paragraphs of the Complaint as though fully set forth herein.

44. Defendant Goodrich, as the chief executive officer and majority shareholder of a privately owned closely held corporation, owed fiduciary duties to Freeland, a minority shareholder, not to benefit from possessing knowledge concerning BE&K's decision and

plan to sell or merge itself at the expense of Freeland, who had no such knowledge. The board of directors of BE&K as agents and representatives of Defendant BE&K likewise owed Freeland such a fiduciary duty.

45. Defendant Goodrich and the members of the board of directors who were knowledgeable of information concerning BE&K's decision, plan, and actions relating to a sale or merger, on behalf of BE&K, failed to disclose the BE&K's plan, decision, and actions in actively seeking a merger and marketing BE&K to Freeland prior to Freeland signing the retirement agreement and agreeing to sell all of his stock back to the company at a lower price than the stock would have been worth after the merger, facts known by Goodrich and BE&K, but not Freeland.

46. Goodrich and BE&K breached their fiduciary duty to Freeland by failing to disclose these material facts. The sale of Freeland's stock at the lower value shortly before BE&K's merger with KBR, benefited Goodrich and other officers/shareholders of BE&K to the detriment of the Freeland, a minority shareholder. Whether intentional or unintentional, whether knowingly or negligently, Goodrich and BE&K breached their fiduciary duties by failing to disclose the known likelihood of a merger and/or acquisition, and/or BE&K's active steps to explore a merger and/or acquisition.

47. Freeland was injured Defendants' breach of fiduciary duties.

WHEREFORE, Plaintiff Freeland demands judgment against Defendant Goodrich for compensatory and punitive damages in the amount of $6,000,000, and costs of the action.

## COUNT VI
## Violation of Alabama Securities Laws,
## Code of Alabama § 8-6-1, et seq.

48.     Plaintiff realleges and readopts by reference all previous paragraphs of the Complaint as though fully set forth herein.

49.     Defendants BE&K and Goodrich, violated sections of the Code of Alabama governing sale and purchase of securities, including but not limited to Code of Alabama § 8-6-17 and Code of Alabama § 8-6-19. Defendants suppressed and/or failed to disclose required material facts of which they had knowledge relevant to the sale of Freeland's stock, and otherwise violated Alabama statutory law.

50.     Freeland was injured and suffered damages as a result of Defendants' violation of these statutory requirements.

WHEREFORE, Plaintiff Freeland demands judgment against Defendants BE&K and Goodrich, for compensatory and punitive damages in the amount of $6,000,000, and costs of the action.

## COUNT VII
## Felonious Injury

51.     Plaintiff realleges and readopts by reference all previous paragraphs of the Complaint as though fully set forth herein.

52.     BE&K and Goodrich willfully violated Ala. Code §8-6-17 and 19, the criminal violation of which is a Class C felony governed by Ala. Code §8-6-18. In the process of so doing, Freeland was harmed as expressed herein.

53. Freeland is entitled to civil recovery based on injuries suffered as a result of the felonious actions committed by Goodrich and BE&K, either directly or through its agents, as governed by Ala. Code §6-5-370 (1975).

WHEREFORE, Plaintiff Freeland demands judgment against Defendants BE&K and Goodrich for compensatory damages in the amount of $6,000,000, and punitive damages, attorneys fees, costs of the action, and any other relief this court may see fit to grant.

## COUNT VIII
### Insider Trading and Minority Shareholder Squeeze-Out

54. Plaintiff realleges and readopts by reference all previous paragraphs of the Complaint as though fully set forth herein.

55. Defendants BE&K and Goodrich engaged in insider trading by inducing Freeland to sell his stock when they knew that BE&K would likely be sold or merged with another corporation. Goodrich alone profited by more than one million dollars by inducing Freeland to sell his shares of the company in January 2008. Defendants knowingly and willfully induced Freeland to accept a stock sale agreement in their benefit based on "insider information." This insider information concerned the future of BE&K, and therefore the future stock price of BE&K. Defendants knew that Freeland had no access to such information, and knew that without such information, Freeland would be more likely to sell his stock back to the corporation. Defendants used their knowledge as insiders to their benefit and Freeland's detriment by squeezing Freeland out of his stock ownership in BE&K.

56. Freeland was significantly harmed by Defendants' insider trading, and by the Defendants' actions to squeeze Freeland out of his stock ownership in BE&K.

WHEREFORE, Plaintiff Freeland demands judgment against Defendants BE&K and Goodrich for compensatory and punitive damages in the amount of $6,000,000, and costs of the action.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Freeland prays for a judgment against all Defendants, jointly and severally, for compensatory and punitive damages in excess of Six Million Dollars ($6,000,000), along with costs, interest and fees, in an amount that the trier of fact deems just and fair, and for such further relief as the Court deems just, including attorneys fees, to which Freeland may be entitled.

Respectfully submitted,

/s/ Vernon L. Wells, II
Vernon L. Wells, II (WEL003)

/s/ V. Walker Wells
V. Walker Wells (WEL050)
Attorneys for Plaintiff

OF COUNSEL:
**Walston Wells & Birchall, LLP**
1819 5th Avenue North, Suite 1100 (35203)
P.O. Box 830642
Birmingham, AL 35283-0642
Telephone: (205) 244-5200
Facsimile: (205) 244-5400
vwells@walstonwells.com
wwells@walstonwells.com

**PLEASE SERVE DEFENDANTS WITH THIS COMPLAINT BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, AS FOLLOWS:**

**Michael Goodrich**
3320 Dell Road
Birmingham, AL, 35223

**Service upon BE&K, Inc.**
Care Of:
Capitol Corporate Services Inc.
150 S. Perry Street
Montgomery, AL 36104

In accordance with the Federal Rules of Civil Procedure, known counsel for Defendants have been asked to waive service.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a struck jury for the trial of this case.

*/s/ Vernon L. Wells, II*
OF COUNSEL

15